Jonathan W. Heaton
Utah Bar No. 13739
HEATON LEGAL GROUP, LLC
222 South Main Street, 5th Floor
Salt Lake City, UT 84101
Tel: (801) 253-3305
jon@heatonlegalgroup.com
*Attorneys for Plaintiffs Chari Pack
and Chari Ventures, LLC*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| CHARI PACK and CHARI VENTURES LLC f/k/a PERSNICKETY PRINTS, LLC, a Utah limited liability company, | **COMPLAINT** |
| Plaintiffs, | |
| vs. | Case No.   2:25-cv-00947 |
| PERSNICKETY LLC f/k/a PERNICKETY CO, a Texas limited liability company; JOSEPH TERNDRUP, an individual; UPLILY, LLC d/b/a PERSNICKETY PRINTS, a Texas limited liability company; and VERITEX COMMUNITY BANK, a Texas state-chartered bank, | Judge   _____ |
| Defendants. | |

Plaintiffs CHARI PACK and CHARI VENTURES LLC f/k/a PERSNICKETY PRINTS, LLC, hereby allege the following as and for claims and causes of action against Defendants PERSNICKETY LLC f/k/a PERSNICKETY CO, a Texas limited liability company, JOSEPH TERNDRUP, an individual, UPLILY, LLC d/b/a PERSNICKETY PRINTS, a Texas limited

liability company; and VERITEX COMMUNITY BANK, a Texas state-chartered bank.

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiff CHARI PACK ("Pack") is an individual who is and was at all relevant times a citizen and resident of the State of Utah.

2. Plaintiff CHARI VENTURES LLC ("Chari Ventures") is and was at all relevant times a limited liability company duly organized and existing under the laws of the State of Utah and wholly owned and controlled by Pack. Chari Ventures changed its name from Persnickety Prints, LLC to Chari Ventures LLC following the sale of the assets of its Persnickety Prints business (the "Business") located and operating at 190 N. Orem Blvd. in Orem Utah on or about June 14, 2023.

3. Defendant PERSNICKETY LLC ("Persnickety") is and was at all relevant times a limited liability company organized and existing under the laws of the State of Texas and duly qualified to do business in the State of Utah. Persnickety previously changed its name from Persnickety Co to Persnickety LLC. Upon information and belief, all of Persnickety's members are Texas citizens, and none are Utah citizens.

4. Defendant JOSEPH TERNDRUP ("Terndrup") is an individual who is and was at all relevant times a citizen and resident of the State of Texas.

5. Defendant UPLILY, LLC ("Uplily") is and was at all relevant times a limited liability company organized and existing under the laws of the State of Texas, duly qualified to do business in the State of Utah and doing business in the State of Utah under the registered DBA Persnickety Prints. Upon information and belief, all of Uplily's members are Texas citizens, and none are Utah citizens.

6.  Defendant VERITEX COMMUNITY BANK ("Veritex") is and was at all relevant times a financial institution organized and existing under the laws of the State of Texas with its principal place of business in the State of Texas.

7.  This Court has jurisdiction pursuant to 28 U.S.C. §§ 1332(a) because there is complete diversity of citizenship and the amount in controversy exceeds $75,000.00.

8.  Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the events giving rise to the claim occurred in the State of Utah and/or a substantial part of the property that is the subject of this action is situated in the State of Utah.

## GENERAL ALLEGATIONS

9.  On or about June 14, 2023, Chari Ventures (at the time Persnickety Prints, LLC) sold the assets of the Business to Persnickety (then Persnickety Co) for the principal sum of $2,700,000.00 pursuant to an Asset Purchase Agreement ("Purchase Agreement"), which is dated that same date.

10. Persnickety funded a significant portion of the Business's purchase price through proceeds from a SBA loan which was issued to Persnickety by Veritex (the "SBA Loan").

11. The SBA Loan was secured by a security agreement encumbering the assets of the Business in a first position.

12. An additional $572,000 of the Business' purchase price was satisfied through seller financing. The seller financing is documented by a Promissory Note (the "Promissory Note") in the principal sum of $300,000 and a Standby Promissory Note (the "Standby Note") in the principal sum of $272,000. Persnickety's monthly payments under the Promissory Note began to accrue and become payable on October 1, 2023. The Standby Note's terms provide that monthly

3

payments under that instrument would not commence until after the SBA Loan was paid and satisfied in full.

13. In addition to partially financing the purchase price through the Promissory Note and Standby Promissory Note, Chari Ventures paid to Persnickety $125,130 in cash for the purpose of inducing Persnickety to honor any outstanding "print credits" (similar to gift cards) that might be redeemed by customers.

14. Persnickety's performance under the Promissory Note and Standby Note were secured by a Continuing Unconditional Guaranty ("Guaranty") which was executed by Terndrup in favor of Chari Ventures and Pack, and by a Security Agreement dated June 27, 2023 ("Security Agreement") which was executed by Persnickety in favor of Chari Ventures and Pack and encumbered the Business's assets in a second position behind the security interest securing the SBA Loan.

15. Plaintiffs allege on information and belief that, at all relevant times following Persnickety's purchase of the Business, Persnickety generated millions of dollars per year in sales revenues, resulting in significant earnings before interest, taxes, depreciation, and amortization (EBITDA).

16. Notwithstanding the foregoing, on information and belief, in early to mid 2025, Persnickety defaulted on payment obligations that were owed to Veritex under the SBA Loan.

17. Soon thereafter, in May 2025, Persnickety stopped making payments which accrued and were payable to Pack under the terms of the Promissory Note.

18. On or about July 17, 2025, Pack served Persnickety and Terndrup with a written notice enumerating their defaults under the Purchase Agreement, Promissory Note, Standby Note,

Security Agreement and Guaranty (the "Notice of Default").

19. Persnickety and Terndrup failed and refused to act to cure the defaults that are set out in the Notice of Default.

20. Terndrup, directly and/or through authorized agents, has subsequently anticipatorily repudiated the duties and obligations he (individually) and Persnickety owe to Pack and Chari Ventures under the terms of the Guaranty, Promissory Note, Standby Note, and Security Agreement.

21. The payment duties and obligations which are owed by Persnickety and Terndrup to Chari Ventures and Pack under the Promissory Note, Standby Note, Security Agreement and Guaranty have been accelerated, with the result that Persnickety and Terndrup now owe Chari Ventures and Pack more than $550,000, inclusive of principal, interest, and late charges.

22. Plaintiffs allege on information and belief that, contemporaneously with the referenced defaults, Terndrup, Persnickety and Uplily entered into a conspiracy and scheme with the intent and purpose of inducing Veritex to sell Persnickety's business assets at a sale and at a price that were commercially unreasonable, with the result that the Business and its ongoing operations and strong earning capacity were transferred from Persnickety to Uplily, an entity owned and/or controlled directly or indirectly by Terndrup.

23. Upon information and belief, the said conspiracy and scheme effectively enabled the continued the operation of the Business by and for the ultimate benefit of Persnickety's principal Terndrup but without any of the debt obligations undertaken by Persnickety.

24. Plaintiffs allege on information and belief that in furtherance of the said conspiracy and scheme, Terndrup, Persnickety and Uplily:

  a. Failed to disclose to and withheld from Veritex the fact that the Business's operations were both ongoing and generating significant amounts of revenue and EBITDA;

  b. Provided Veritex with desk appraisals for the Business's physical assets that mischaracterized and materially understated the true value of the Business and its ongoing business operations and income producing capacity;

  c. Induced Veritex to schedule and sell the assets at auction on or about July 25, 2025 without any reasonable attempt to value the Business or its assets or effect a sale of the Business and assets in a commercially reasonable manner;

  d. Caused Uplily to purchase the Business's ongoing business operations and assets at auction for approximately $115,000; and

  e. Continued, through Uplily, with little or no pause in operations and with Terndrup remaining in full control at all times, the exact same Business generating millions of dollars in annual sales revenues that had previously been conducted by Persnickety.

25. In short, in perpetrating the foregoing conspiracy and scheme, Terndrup, Persnickety, and Uplily committed a fraudulent transfer to the detriment and victimization of Plaintiffs.

26. In response to and in furtherance of the scheme perpetrated by Terndrup, Persnickety, and Uplily, Veritex scheduled a public auction of Persnickety's assets by way of a ten (10) day Notification of Disposition of Collateral ("Sale Notice"), which included an itemized listing of certain physical assets.

27. Veritex mailed the Sale Notice to Plaintiffs, but Plaintiffs did not timely receive the Sale Notice and were not made aware of the Veritex auction until after the auction had already

taken place. Plaintiffs were therefore deprived of the opportunity to appear at the auction and bid and/or take other actions to protect their interests under the Security Agreement.

28. The method, manner, time, place, and other terms of the disposition of Persnickety's business assets were not commercially reasonable, as evidenced in part by the fact that Uplily and Terndrup were enabled to purchase the Business free and clear of encumbrances emanating from the SBA Loan and/or Plaintiff's Promissory Note, Standby Promissory Note and Security Agreement for approximately $115,000, a tiny fraction of the Business' annual revenues and annual EBITDA, and a tiny fraction of the amount for which the Business almost certainly would have sold as a going concern.

29. The commercial unreasonableness of the sale is further evidenced by the facts that (i) the sale was scheduled to take place in Dallas, Texas, while the physical assets were located in Orem, Utah and unavailable for inspection by prospective buyers; and (ii) the Sale Notice omitted any reference to, or any listing or description of, the intangible assets and intellectual property of the Business, including but not limited to the website domains, web related content, online stores and seller accounts, trade names, trademarks, copyrights, and goodwill, the value of which likely far outstripped the listed physical assets.

30. In short, Veritex's Sale Notice likely would have led any non-insider, non-related prospective buyer attending the auction in Texas to believe that the only things being sold were old electronics, printers and similar equipment; miscellaneous office furniture items; and printing related supplies and inventory located at a distant site in Utah—as opposed to an actively operating business with continually employed personnel and significant daily and monthly sales.

31. As a direct and proximate result of the acts and conduct of Defendants as alleged

above, Plaintiffs have been deprived of the benefit of security for the debt obligations which are evidenced by the Promissory Note and Standby Note.

32. As a direct and proximate result of Defendants' breaches and other wrongful acts and conduct, Plaintiffs have suffered loss and damage to the extent of an amount in excess of $75,000.

33. Plaintiffs have been required to retain the services of legal counsel to assist in prosecuting and pursuing the claims and causes of action which are asserted herein, and in so doing have incurred further compensable loss and damage in the form of attorney's fees and costs so incurred.

## FIRST CAUSE OF ACTION
**(Breach of Contract – Persnickety)**

34. Plaintiffs repeat and reallege the foregoing allegations in this Complaint and incorporate the same herein by reference as though set forth in full.

35. Persnickety owes payment duties and obligations to Plaintiffs which are evidenced by the Promissory Note, Standby Promissory Note, and Security Agreement.

36. Persnickety has breached the payment obligations which it owes to Plaintiffs.

37. Plaintiffs have exercised their rights and have accelerated the payment obligations which are evidenced by the Promissory Note, Standby Promissory Note and Security Agreement.

38. As a direct and proximate result of Persnickety's breaches, Plaintiffs suffered loss and damage to the extent of an amount in excess of $75,000.

## SECOND CAUSE OF ACTION
**(Breach of Guaranty – Terndurp)**

39. Plaintiffs repeat and reallege the foregoing allegations in this Complaint and

incorporate the same herein by reference as though set forth in full.

40. Terndrup owes payment duties and obligations to Plaintiffs which arise under and are evidenced by the Guaranty.

41. Terndrup has breached, anticipatorily breached, repudiated and failed and refused to perform his duties and obligations under the Guaranty.

42. As a direct and proximate result of Terndrup's breaches, Plaintiffs have suffered loss and damage to the extent of an amount in excess of $75,000.

### THIRD CAUSE OF ACTION
**(Conspiracy to Defraud Creditors – Persnickety, Terndrup and Uplily)**

43. Plaintiffs repeat and reallege the foregoing allegations in this Complaint and incorporate the same herein by reference as though set forth in full.

44. Persnickety, Terndrup and Uplily entered into a conspiracy and scheme to cause the Business and assets of Persnickety to be transferred pursuant to a sale and at a price that were commercially unreasonable

45. Persnickety, Terndrup and Uplily successfully implemented their conspiracy and scheme, with the result that Uplily and/or Terndrup were able to purchase the Business and its assets at the Veritex sale at an unreasonably discounted price, leaving Persnickety without assets and leaving Plaintiffs with little or no recourse.

46. As a direct and proximate result of Persnickety, Terndrup and Uplily's wrongful acts and conduct, Plaintiffs have suffered loss and damage to the extent of an amount in excess of $75,000.

## FOURTH CAUSE OF ACTION
### (Violation of Uniform Voidable Transactions Act, Utah Code § 25-6-101, et seq. – Persnickety, Terndrup and Uplily)

47. Plaintiffs repeat and reallege the foregoing allegations in this Complaint and incorporate the same herein by reference as though set forth in full.

48. Persnickety, Terndrup, and Uplily caused substantially all of the assets of Persnickety to be transferred to Uplily, an insider or related party which is directly or indirectly owned by, controlled by, and/or existing for the ultimate benefit of Terndrup.

49. The consideration received for the said transfer was a small fraction of the value of the assets transferred and did not constitute reasonably equivalent value.

50. As a result of the transfer, Persnickety was left insolvent and unable to make its payment obligations to Plaintiffs.

51. The actions of Persnickety, Tendrup, and Uplily were undertaken with actual intent to hinder, delay, and defraud Plaintiffs.

52. As a direct and proximate result of the wrongful transfer of assets from Persnickety to Uplily, Plaintiffs have suffered loss and damage to the extent of an amount in excess of $75,000.

53. In addition to damages, pursuant to Utah Code § 25-6-303, Plaintiffs are entitled to (i) avoidance of the transfer, (ii) attachment against the transferred assets or other property of Uplily, (iii) an injunction against further disposition of the assets, (iv) appointment of a receiver to take charge of the transferred assets, and (v) any other relief required under the circumstances.

## FIFTH CAUSE OF ACTION
### (Violation of UCC § 9-610 – Veritex)

54. Plaintiffs repeat and reallege the foregoing allegations in this Complaint and incorporate the same herein by reference as though set forth in full.

55. The method, manner, time, place, and other terms of the public auction conducted by Veritex were commercially unreasonable.

56. Veritex was not entitled to dispose of Persnickety's assets in a commercially unreasonable manner.

57. Uplily was not a good faith purchaser of Persnickety's assets.

58. As a direct and proximate result of the commercially unreasonable sale, Plaintiffs have suffered loss and damage to the extent of an amount in excess of $75,000.

59. In addition to or as an alternative to damages, Plaintiffs are entitled to an order setting aside the Veritex sale of Persnickety's Business and Assets, and reaffirming or reinstating Plaintiffs' Security Agreement as a lien on said Business and assets.

## SIXTH CAUSE OF ACTION
**(Breach of Implied Covenant of Good Faith and Fair Dealing – Persnickety and Terndrup)**

60. Plaintiffs repeat and reallege the foregoing allegations in this Complaint and incorporate the same herein by reference as though set forth in full.

61. At all relevant times, Persnickety and Terndrup owed Plaintiffs an implied covenant of good faith and fair dealing emanating from the Purchase Agreement, Promissory Note, Standby Promissory Note, Security Agreement and Guaranty.

62. Persnickety and Terndrup, by their acts and conduct which are alleged hereinabove, have breached the implied covenant of good faith and fair dealing that was and is owed to Plaintiffs.

63. As a direct and proximate result of Persnickety and Terndrup's breaches and wrongful acts and conduct, Plaintiffs have suffered loss and damage to the extent of an amount in excess of $75,000.

## SEVENTH CAUSE OF ACTION
### (Unjust Enrichment – Persnickety, Terndrup and Uplily)

64. Plaintiffs repeat and reallege the foregoing allegations in this Complaint and incorporate the same herein by reference as though set forth in full.

65. Persnickety, Terndrup, and Uplily each derived significant financial benefits from (1) Plaintiffs' partial financing of the purchase price of the Business and (2) in causing Veritex to subject the Business and its assets to sale in a manner and for a price that were commercially unreasonable.

66. Persnickety, Terndrup, and Uplily had full knowledge and appreciation of the financial benefit conferred upon them.

67. Uplily and Terndrup's acceptance and retention of the financial benefit emanating from their purchase of the Business and its assets at the Veritex sale for a commercially unreasonable price, without paying fair value and/or providing fair compensation to Plaintiffs, is violative of principals of equity.

68. As a direct and proximate result of the acts and occurrences which are alleged herein, Uplily and indirectly Terndrup have been unjustly enriched at Plaintiffs' expense to the extent of an amount in excess of $75,000.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief as follows:

1. For an award of damages against Defendants, jointly and severally, in an amount in excess of $550,000;

2. For an award of pre- and post-judgment interest on damages to the extent permitted by law;

3. For an award of reasonable attorney's fees, recoverable costs of court and other expenses incurred in connection with this matter;

4. For the avoidance of the transfer of Persnickety's assets to Uplily and/or the setting aside of the Veritex sale;

5. For the reinstatement of Plaintiffs' Security Agreement as a lien against the Business and assets;

6. For attachment against the Business assets and/or other personal property of Uplily;

7. For appointment of a receiver;

8. For a temporary restraining order, preliminary injunction, and/or other equitable relief to prevent further disposition of the assets; and

9. For such other relief as the Court determines to be just and proper under the circumstances.

DATED this 24th day of October, 2025.

HEATON LEGAL GROUP, LLC

  /s/ Jonathan W. Heaton
Jonathan W. Heaton
222 South Main Street, 5th Floor
Salt Lake City, UT 84101
Tel: (801) 253-3305
jon@heatonlegalgroup.com
*Attorneys for Plaintiffs Chari Pack
and Chari Ventures, LLC*